JOHN T. SHEWMAKE, assignee, *et al.*, plaintiffs in error, *vs.* MARY A. WILLIAMS, defendant in error.

Where the title to land was fradulently procured from the owner and conveyed to a third person, who took with notice of the perpetration of the fraud, both deeds will be set aside by a court of equity.

Equity. Fraud. Deed. Before Judge GIBSON. Richmond Superior Court. April Term, 1874.

For the facts, see the decision.

J. T. SHEWMAKE, for plaintiffs in error.

HOOK & WEBB, for defendant.

WARNER, Chief Justice.

This was a bill filed by the complainant against the defendants to set aside certain deeds to a house and lot in the city of Augusta, on the ground that the same were without consideration and had been obtained by deceitful representations with intent to defraud the complainant. On the trial, it was agreed that the chancellor should determine both the law and facts of the case, without the intervention of a jury. After considering the evidence submitted at the hearing, the chancellor decreed that the deed made by the complainant to the defendant Mathews, and the deed made by Mathews to the defendant O'Dowd, be set aside and annulled; whereupon,

the defendants excepted.   It appears from the evidence that the complainant is a colored woman, that the defendant, Mathews, is a colored man, who was engaged in the grocery business; that complainant and Mathews were members of the same church, he being a deacon thereof; that the deed from complainant to Mathews was procured from her on the representations of Mathews, that he wanted it to pledge as collateral security to raise $800 00 to enable her son, Augustus, to become a partner with him in the grocery business; that on the same day he got the deed from complainant, he executed an absolute deed for the property to O'Dowd, the other defendant, for the consideration of $1,500 00, taking O'Dowd's bond to reconvey the property to him, Mathews, on payment of that amount.   At the time of this transaction, it appears from the evidence in the record that Mathews was indebted to O'Dowd $721 05, that the papers were drawn up by O'Dowd's lawyer, who was instructed to draw them so that they would *stick*.   There does not appear to have been any consideration for the deed from the complainant to Mathews, either good or valuable, except his representation to her that he wanted it to pledge as collateral security to raise $800 00 to enable her son to become a partner with him in the grocery business; that this representation to her was false and fraudulent, is manifested by the fact that as soon as he procured the deed from her, he conveyed the property to O'Dowd to secure the payment of his own indebtedness to him for $721 05.   O'Dowd never paid but $100 00 in money to Mathews.   The record shows that he paid to the lawyer for his services in drawing up the papers $43 00; for Mathews' taxes for the years 1868, 1869, 1870, $280 25; to Geraty & Armstrong, for Mathews, $100 00; and let him have merchandise to the amount of $274 89.   All these amounts appear to have been paid for the benefit of Mathews.   The complainant had entire confidence, as the evidence shows, in her colored brother in the church, Deacon Mathews, and it is pretty clear from all the evidence, that he took advantage of that confidence, and fraudulently procured the deed from her under false pretences for

his own benefit. The court, in passing on the facts of the case, having found that O'Dowd had notice in relation to the transaction between Deacon Mathews and the complainant as to the procurement of the deed from her without consideration, there was no error in rendering the decree setting aside the deeds of conveyance.

Let the judgment of the court below be affirmed.